PANNELL'S HEIRS *vs.* OVERTON.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE
PARISH OF RAPIDES, THE JUDGE OF THE SEVENTH PRESIDING.

The object of the monition act of 1834, is merely to provoke an inquiry into the legality of the proceedings which preceded or accompanied judicial sales, and the homologation of such sales, has no other effect than to cure all nullities, resulting from any informality in making the sale.

It is irregular to cumulate a petitory action with the proceedings on a monition to homologate a sale, in the shape of a reconventional demand. If the objection is made, the court will reject such a proceeding and demand.

If the opponents to a monition, set up title in the nature of a petitory action, and the other party chooses to join issue on the merits, the court will proceed to try the case on the titles, as in a petitory action.

The wife had the capacity, even before the act of 27th March, 1835, to make a valid renunciation of her dotal and paraphernal rights on property, ceded by her husband to his creditors, when she appears with the creditors, and compounds with them for a part of her debt.

The heirs of Frances Pannell, deceased by their tutrix, bring suit and oppose the homologation of a sale of a tract of land, containing five hundred arpents on bayou Wacksha, in the parish of St. Landry, and which she alleges was confirmed to Mrs. Frances Pannell, on the 29th day of April, 1816.

This land with other property, was ceded by David Pannell, in 1823, to his creditors. In making his cession the petitioner states, " that he has received from the estate of Wm. Wickoff, an account of his wife's portion, sixteen thousand four hundred and eighty dollars, the greater part of which Mrs. Pannell is willing to relinquish on a competency being secured to her."

In the schedule, this land is surrendered with the following statement :

" A claim to a tract of land on the bayou *Waxé,* in the parish of St. Landry, of five hundred acres, granted by the Spanish government to Mrs. F. Pannell, subject to overflow,

and the title I am informed has never beeen confirmed ; of but little value, say five hundred dollars."

There was then various tracts of land, and other property surrendered, on most of which the creditors had the vendor's privilege and mortgage.

W. H. Overton, and J. H. Johnston, were the syndics appointed by the creditors, to sell the property surrendered.

During the deliberation of the creditors, Mrs. Pannell came forward and made the following relinquishment : " Before me, Thomas C. Scott, parish judge in and for the parish of Rapides, etc., personally appeared Frances Pannell, and her husband, David Pannell, the *former* of whom does, by these presents, declare and renounce, that she never will attempt to exercise any of her dotal or paraphernal rights on the property now surrendered to his creditors, by the said David Pannell, further than the sum of four thousand five hundred dollars, which she has already claimed, and which was allowed her by the creditors at their meeting on the 18th day of October, 1823, and for the payment of which she is now exercising the rights of a tacit mortgage, or lien, on all the property, both real and personal, by her said husband, to his creditors surrendered, which, by law, she is entitled to ; and the said Frances does further declare, that she never will interrupt the said property, when sold *by* the said syndic, further than the said sum of four thousand five hundred dollars, whether the same be purchased by one of the creditors of the said husband, or an indifferent person ; hereby renouncing to all intents and purposes, her dotal or paraphernal liens or mortgages on the same. To this act her husband, David Pannell, hereby gives his express consent, and signs with his said wife.

" In testimony whereof, etc., this 20th day of November, 1823.

" FRANCES PANNELL.<br>" D. PANNELL.

" Done before me,     " T. C. SCOTT, *Parish Judge.*

" L. WEEDON,      } Witnesses."
" G. OAKLEY,      }

The sum stipulated in the foregoing act, was allowed, and paid to Mrs. Pannell, by the creditors. At the sale of the ceded property, the tract of land in question, was adjudicated to W. H. Overton, for the sum of sixty-nine dollars. The sale was made by the parish judge, as auctioneer.

On the 19th March, 1835, Overton took out his monition to have said sale homologated and confirmed.

The heirs of Mrs. F. Pannell, then filed their opposition, and set up title to the property in question, that the title to the land had been confirmed to their ancestor, and was her separate property, and could not be legally sold, as the property of D. Pannell, by his creditors ; that the whole of the proceedings under which said sale was made, were irregular, illegal and void, and consequently the sale itself. They pray that the homologation of the sale be refused, and that they be quieted in their title to said tract of land, etc.

Overton joined issue, and set up title to the land as derived from Pannell, under the cession of his property, and syndic's sale.

The district judge sustained the opposition to the homologation of the sale, on the ground that it was made contrary to law, and annulled the sale. Judgment was rendered decreeing the land in controversy, to the plaintiffs, and quieting them in their title thereto. From all of which the defendant appealed.

*Hyams,* for the plaintiffs, contended, that the sale sought to be confirmed, was illegal for want of many of the formalities required by law ; but especially as General Overton was one of the syndics, he could not become the purchaser of any of the property surrendered by the insolvent to his creditors. Under a forced alienation, the purchaser will acquire no title, unless the formalities of law are complied with. 7 *Martin, N. S.,* 181. 3 *Louisiana Reports,* 418. 9 *Ibid.,* 531. *Louisiana Code, article* 1784. 11 *Martin,* 297. 4 *Martin, N. S.,* 267. 8 *Ibid.,* 165. 9 *Louisiana Reports,* 351. 18 *Duranton, Nos.* 206, 207.

2. But Mrs. Pannell made no relinquishment of this tract

of land ; first, she has not done it expressly ; second, she has not done so by inference or implication, for no one renounces liens or claims on their own property. This property was placed on the bilan by Pannell, as belonging to his wife, besides the sum of sixteen thousand four hundred and eighty dollars, which he acknowledges due to her for her dotal and paraphernal claims. A renunciation of liens and mortgages on another's property, cannot be tortured into a conveyance of one's own tract of land.

3. None of the forms of law were pursued to make the act, even a good relinquishment, as to dotal and paraphernal rights. The notary should have set forth at length the nature of her rights, whether dotal, paraphernal, or otherwise, on her husband's property, according to law 58, title 18, of the 3d Partidas. 4 *Martin, N. S.*, 230.

4. Mrs. Pannell, could not legally divest herself of the ownership of this tract of land, by giving it in payment of her husband's debts, or surrendering it to his creditors ; and she had a right to recover it, when it had been ceded to creditors for a debt of her husband. The Roman Civil Law was in force at this time. *Louisiana Code,* 2412. 9 *Louisiana Reports,* 590, 602.

*Winn* and *Dunbar,* for the defendant, maintained, that Mrs. Pannell, divested herself of all title to the land in controversy, by relinquishing her dotal and paraphernal rights to all the property surrendered. This she did in the fullest manner. This property was, no doubt, paraphernal, and was susceptible of alienation by the wife with the consent of her husband. *Civil Code of* 1808, *page* 334, *article* 58. 3 *Martin,* 455.

2. It will then be seen, that the title to this property passed by the surrender of D. Pannell, to his syndics, for the benefit of his creditors, and shows that the plaintiffs are wholly without title, and cannot claim it, even admitting the sale made by the syndics was informal. The title remains in the creditors, and could only revert in any case, to the heirs of D. Pannell, if the creditors did not claim it. But

the plaintiff's claim in the right, and as the heirs of Mrs.
Pannell. Her title is irrevocably gone by her relinquishment
and receipt of the sum stipulated.

3. But even admitting the sale to be informal, Mrs. Pannell and her husband recognized it as valid by her becoming a purchaser of a slave, and receiving the sum of four thousand five hundred dollars, in lieu of all her rights and claims to the property surrendered. Having done so, her heirs who sue in her name alone, cannot interfere in the confirmation of this sale. They are without interest, and have no right to enable them to oppose its homologation. If the sale should be declared informal and set aside, the title to this property would vest in the creditors.

Mrs. Pannell made an advantageous contract with the creditors of her husband. She, by her relinquishment, gave up all her claim of sixteen thousand dollars, for the sum of four thousand five hundred dollars, which the creditors paid her.

Neither the wife or her heirs have made a retraxit of the relinquishment or renunciation ; nor within the forty days after the act of 1835, as required by said act.

*Bullard, J.,* delivered the opinion of the court.

This case appears before us in the form of a petitory action, engrafted on a monition under the act of 1834. The appellant having purchased at syndic's sale, a tract of land, in Opelousas, obtained by a monition from the clerk of the District Court, calling on all persons interested, who could set up any right, title or claim, in and to the property, in consequence of any informality in the order, or for any other defect whatsoever, to show cause why the sale should not be confirmed and homologated, in pursuance of the act of 1834. The land purchased is described as a tract of five hundred arpents on the bayou *Waxie* or *Wacksha,* confirmed to Mrs. Frances Pannell, in 1816.

The appellees came forward as the heirs at law of Mrs. Frances Pannell, the wife of David Pannell, by whom the land had been surrendered to his creditors under the act of

1817, and opposed the homologation for the following reasons : 1st, because the land was the separate property of Mrs. Pannell, and was not legally sold as the property of David Pannell.

2d. That the land is situated in the parish of St. Landry, and could not be legally sold in the parish of Rapides.

3d. That the act of 1834, does not apply to a sale made before its passage.

4th. That all the proceedings under which the sale took place were irregular, illegal and void.

The heirs conclude by a prayer, that the court would proceed to a final adjudication as to the title to said tract of land, that they may be quieted in their title to the same.

The appellant, in answer to these allegations, avers, that the land in question, was surrendered by David Pannell to his creditors, and that it was sold for their benefit, and purchased by him ; that Mrs. Pannell acquiesced in, and approved all the acts and proceedings, and that if she ever was the owner, she was divested of title ; that she made an arrangement with the creditors of her husband after the surrender, by which she was secured and paid four thousand five hundred dollars for her claims, and in consideration thereof, she alienated and renounced to the creditors. He denies that she had any just claim upon the property, and he concludes by praying that he may be declared to be the legal owner.

It does not appear to us that the heirs of Mrs. Pannell, have any interest in opposing the homologation of the sale, because they do not claim through D. Pannell or his creditors, and they would gain nothing if the sale were declared irregular and null, inasmuch as the property would still remain that of the creditors. Their ground of opposition to the homologation, must, therefore, be disregarded, and the question of title alone considered, as between the heirs and the appellants.

The object of the monition act, was merely to provoke an inquiry into the legality of the proceedings which preceded or accompanied judicial sales, and the homologation of such

sales, has no other effect than to cure such nullities.  It is
irregular to cumulate a petitory action with the proceeding
contemplated by that act in the shape of a reconventional
demand ; and if the objection had been made in this case,
we should have thought it ought to have been rejected.  But
the appellant has chosen to answer to the merits, to assert
title to the premises, as against Mrs. Pannell and her heirs,
and to ask a recognition of his title.

Considering the action, therefore, as substantially petitory,
it is manifest that the opponents must make out their title,
and they can gain nothing by showing a defect in that of the
appellant.

No primitive title in favor of Mrs. Pannell, is exhibited,
but in the schedule of her husband, the tract of land surren-
dered by him to his creditors, is described as having been
granted by the Spanish government to her, and he estimates
the claims at five hundred dollars, which he supposed had
never been confirmed.  In the monition procured by the
defendant, the land is described as a tract of five hundred
arpents on the Bayou *Waxie*, confirmed to Mrs. Frances Pan-
nell, on the 29th of March, 1816.

This evidence sufficiently shows, that the title to the land
was originally in the ancestor of the plaintiffs, and it remains
to inquire what evidence there is that it has been divested,
and that the defendant is now the owner.

His counsel has contended, that by appearing at the
meeting of creditors, and setting up a large claim, for which
she insisted upon a general privilege upon all the property
surrendered, but which she offered to relinquish in favor of
the other creditors, except four thousand five hundred dol-
lars, to be allowed her as privilege on all the moveables and
immoveables of her husband surrendered, and by the accep-
tance of this proposition on the part of the creditors ;  and the
payment of that amount to her, and in virtue of her subse-
quent formal relinquishment by notarial act, assisted by her
husband, for that consideration, she is precluded from setting
up any title to this part of the property embraced in the
schedule.

WESTERN DIST.
Oct. 1838.

PANNELL'S HEIRS
vs.
OVERTON.

The object of
the monition act
of 1834, is mere-
ly to provoke an
inquiry into the
legality of the
proceedings
which preceded
or accompanied
judicial    sales,
and the homolo-
gation of such
sales has no other
effect than to
cure all nullities
resulting from
any informality
in making the
sale.

It is irregular
to cumulate a
petitory action
with the pro-
ceedings on a
monition to ho-
mologate a sale,
in the shape of
a reconventional
demand. If the
objection    is
made, the court
will reject such
a proceeding and
demand.

If the oppo-
nents to a moni-
tion set up title
in the nature of
a petitory action,
and the other
party chooses to
join issue on the
merits, the court
will proceed to
try the case on
the titles, as in a
petitory action.

It becomes necessary to examine the act passed before the notary, and to see to what extent the plaintiff's ancestor must be considered as having ceded and abandoned her right to the land in controversy.   In that act she was assisted by her husband, and " declared and renounced, that she never will attempt to exercise any of her dotal or paraphernal rights on the property now surrendered to his creditors by the said David Pannell, further than the sum of four thousand five hundred dollars, etc., for the payment of which she is now exercising the rights of a tacit mortgage on all the property, real and personal, by her said husband to his creditors sur-rendered, etc."   And she does further declare that she will never interrupt the said property when sold by the said syn-dics, further than the said sum of four thousand five hundred dollars, whether the same be purchased by one of the credi-tors of her said husband, or an indifferent person, hereby renouncing to all intents and purposes her dotal and para-phernal liens or mortgages on the same."

It is shown, that the sum stated as the consideration of this renunciation, was paid to her by the creditors, according to their agreement at a previous meeting.

By this contract, Mrs. Pannell not only renounces all her *dotal* or *paraphernal rights* on all the property surrendered, but she reserves the right of enforcing her lien upon it in the hands of the creditors, for the amount allowed her.   It can-not be supposed that she intended to retain this tract of land, as paraphernal, and at the same time enforce her lien upon it as the property of the creditors under the surrender.   Such pretensions are wholly repugnant to each other.   She further engages never to disturb the purchasers of any part of the property surrendered.   The latter clause in which she re-nounces her dotal or paraphernal mortgages, cannot be taken to limit or restrict her abandonment of all her rights first set forth in the act.   No part of the surrendered property is excepted, and we are not to presume that the creditors would have paid her the amount, if they had understood at the time that she was to reserve any part as her separate pro-perty.   From the terms of this contract the creditors had a

right to suppose, that in consideration of four thousand five hundred dollars, allowed her as a privilege, Mrs. Pannell intended to abandon all pretensions to the property included in the bilan of her husband. If in the first clause she had intended only to renounce her tacit mortgage, and not abandon the property itself, this last clause would have been useless. It is in this sense we are to suppose she intended the creditors should understand her at the time, and it is in that sense that she ought to be bound.

But it is contended, on the authority of the case *Gasquet* vs. *Dimitry*, 9 *Louisiana Reports*, 585, and numerous other cases, that she is not bound, because no legal remuneration was made after being informed by the notary, of the extent and nature of her marital rights. Those cases appear to us inapplicable to this. Mrs. Pannell, far from contracting jointly with her husband to pay his debts, was seeking to enforce her own claim as a creditor of her husband, and coming in collision with other creditors, whose debts from their character might absorb all the existing property of the husband, thought it prudent to compound for a part of her debt. That a wife may validly sell her paraphernal property or rights, is not doubted, and in such a contract, a formal renunciation is not required. The contract in this case, was onerous and commutative, by which the creditors for a specific price, acquired a right to the undisturbed enjoyment of the property under the engagement of Mrs. Pannell, never to disturb them nor their vendee, and we are of opinion, she and her heirs are precluded from setting up any title to the property in controversy.

The wife had the capacity even before the act of March 27, 1835, to make a valid renunciation of her dotal and paraphernal rights on property ceded by her husband to his creditors, when she appears with other creditors, and compounds with them for a part of her debt.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be annulled and reversed; and it is further decreed, that there be judgment for the defendant, and that he be recognized as the owner of the tract of land in controversy, and quieted in his title and possession of the same, and that the appellees pay the costs in both courts.